

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TRAVELERS INDEMNITY COMPANY,)
*et al.,*                     )
                              )
        **Plaintiffs,**       )
                              )
        **vs.**                )     No.05 C 6441
                              )
BALLY TOTAL FITNESS HOLDING   )
CORPORATION, a Delaware       )
corporation, et al.,          )
                              )
        **Defendants.**        )

### MEMORANDUM OPINION AND ORDER

Travelers Indemnity Company ("Travelers") and ACE American Insurance Company ("ACE") brought this declaratory judgment action against Bally Total Fitness Holding Corporation and Holiday Universal, Inc., n/k/a Bally Total Fitness of the Mid-Atlantic, Inc. (collectively "Bally") and George Aronoff, Paul Toback, John Dwyer, Lee Hillman, Stephen Swid, James McAnally, J. Kenneth Looloian, Liza Walsh, Annie Lewis, Theodore Noncek, Geoff Scheitlin, John Wildman, John Rogers, Jr., and Martin Franklin (collectively "individual defendants"). The suit is an action to rescind several excess directors and officers liability insurance policies that plaintiffs issued to Bally from 2002-2004. Counts I through III request declaratory judgment that the policies are rescinded and of no force or effect pursuant to an Illinois insurance rescission statute, 215 ILCS 5/154. Alternatively, Counts IV through VI request declaratory judgment that plaintiffs are not required to provide coverage to defendants in any of a series of underlying cases pursuant to the exclusion clause contained in the 2003-2004 policies. Fireman's Fund Insurance Company ("FFIC") subsequently

intervened in the action, requesting similar relief with respect to the excess directors and officers liability insurance policy it issued to Bally for the same time period (with Gulf and ACE, collectively, "plaintiffs"). Both the individual defendants and Bally have brought motions to dismiss the complaint and the complaint in intervention. In the alternative, the individual defendants and Bally request a stay pending resolution of the underlying cases. For the reasons set forth below, we deny the individual defendants' motion to dismiss, grant the individual defendants' motion to dismiss non-coverage declaratory judgment claims as against defendant Aronoff, and grant Bally's and individual defendants' motions to dismiss.

## BACKGROUND

Gulf Insurance Company, predecessor-in-interest to Travelers, underwrote and issued to Bally an Excess Directors and Officers Liability and Company Indemnification Insurance Following Form Policy No. GA 0350519, effective for the period June 30, 2002 to June 30, 2003 ("Gulf 02/03 Excess Policy").[1] ACE and FFIC also underwrote and issued to Bally an Excess Liability Insurance Policy No. DOX G21635856 001, and an Excess Directors & Officers and Corporate Reimbursement Policy No. CXD-000-9692-9104, respectively, for the same dates. ("ACE 02/03 Excess Policy" and "FFIC 02/03 Excess Policy").[2]

In order to underwrite and issue Bally's excess insurance policies, Gulf, ACE, and FFIC required Bally to submit a completed Publicly Traded Corporation Renewal Form. Bally complied, and submitted such form, dated April 12, 2002, signed by defendant Dwyer ("2002

---

[1] The Gulf 02/03 Excess Policy has an aggregate limit of liability of $10,000,000 in excess of a $10,000,000 primary policy issued by Great American Insurance Company and a $10,000,000 first excess policy issued by RLI Insurance Company.

[2] The ACE 02/03 Excess Policy has an aggregate limit of liability of $10,000,000 in excess of the $30,000,000 in underlying policies issued by Great American, RLI, and Gulf. The FFIC 02/03 Excess Policy also has an aggregate limit of liability of $10,000,000 in excess of the $40,000,000 in underlying policies issued by Great American, RLI, Gulf, and ACE.

Proposal Form"). Attached to the 2002 Proposal Form, and incorporated into it, Bally submitted, among other documents, its Annual Reports for years 1999, 2000 and 2001, its most recent Form 10-K, Interim Financial Statement, and Form 10-Q. Plaintiffs argue that "[i]n reliance upon the truth of the information contained in the 2002 Proposal Form, including the financial statements and other materials incorporated therein," they issued their 02/03 Excess Policies. (cplt., ¶ 32; cplt. in intervention, ¶ 32).

Prior to the expiration of the FFIC and Gulf 02/03 Excess Policies, Bally requested renewal of such for an additional year. Both agreed, and underwrote and issued Excess Directors & Officers and Corporate Reimbursement Policy, No. CXD-000-8581-1610 ("FFIC 03/04 Renewal Policy"), and Excess Directors and Officers Liability and Company Indemnification Insurance Following Form Policy No. GA 0342747 ("Gulf 03/04 Renewal Policy"), effective for the period from June 30, 2003 to June 30, 2004.[3] The FFIC and Gulf 03/04 Renewal Policies included a completed Directors and Officers Insurance Renewal Application Form, dated June 23, 2003, signed by defendant Toback ("2003 Proposal Form"). Attached to and incorporated into the 2003 Proposal Form were Bally's financial statements and forms similar to the those filed with the 2002 Proposal Form. Both the 02/03 Excess Policies and 03/04 Renewal Policies include various provisions and language that may become important in later analysis. We will address each as its importance arises.

In a March 11, 2004 press release, Bally publicly announced a change in its accounting processes, a reduction of its balance sheet carrying value of its deferred tax assets, and an

_____

[3]The FFIC 03/04 Renewal Policy has an aggregate limit of liability of $10,000,000, in excess of $30,000,000 in underlying insurance, specifically a $15,000,000 primary policy issued by National Union Fire Insurance Company of Pittsburgh, Pa. and a $15,000,000 excess policy issued by XL Specialty Insurance Company. The Gulf 03/04 Renewal Policy has an aggregate limit of liability of $10,000,000 in excess of $40,000,000 of the underlying insurance policies from National Union Fire, XL Specialty, and FFIC.

error in its recognition of prepaid dues. The announcement further stated that "'the accounting change and these actions result in total non-cash charges of $675 million' consisting of (1) $581,000,000 reflecting the 'cumulative effect as of the beginning of 2003 of the changes in accounting principles' (the 'Cumulative Effect Adjustment'); (2) $51,000,000 related to a special tax charge recorded effective the first quarter of 2003; and (3) $43,000,000 as of December 31, 2002 reflected as a restatement resulting from the correction of an error related to the prior calculation of prepaid dues." (cplt.,¶ 42). Following the publication of its accounting changes and errors, Bally announced the resignation of defendant Dwyer, announced that Bally had become the subject of an SEC investigation (id., ¶ 44), and formally announced financial restatements for 2000 through 2003, and the first quarter of 2004, including at least the $581,000,000 Cumulative Effect Adjustment. (id., ¶¶ 45, 46).[4]

On February 8, 2005, Bally's audit committee, in reiterating its financial restatements for the period noted above, indicated that defendants Hillman and Dwyer had responsibility for Bally's accounting errors, that they "'creat[ed] a culture within the accounting and finance groups that encouraged aggressive accounting...[, and]...that Mr. Dwyer made a false and misleading statement to the SEC.'" (Id., ¶ 48). The audit committee also found improper conduct by defendants Noncek and Scheitlin, which led to their terminations. (Id.). Soon thereafter, on February 16, 2005, Bally announced pending criminal investigation against the company by the Department of Justice, and shareholder demands to seek remedies against parties responsible for the accounting errors that led to Bally's financial restatements. Shareholder actions have indeed been instituted in district courts in Illinois, Oregon, and

---

[4]FFIC states that Bally restated its consolidated financial statements for 2000 through 2003 on November 30, 2005 (cplt. in intervention, ¶ 42).

Massachusetts, along with a state court in Illinois (collectively "Bally matters").

That brings us to the current dispute. Defendants have sought coverage for some or all of the Bally matters under the plaintiffs' Excess and Renewal Policies. Because the 2002 and 2003 Proposal Forms incorporated financial statements that "contained material misrepresentations or false warranties either made with the actual intent to deceive or that materially affected the acceptance of the risk or the hazard assumed by" plaintiffs (cplt., ¶¶ 54, 58, 62; cplt/in intervention, ¶¶ 51, 56), plaintiffs brought this action for declaratory judgment rescinding their respective policies. In the alternative, plaintiffs seek a declaration of non coverage of the 03/04 Renewal Policies for any of the Bally matters for all defendants.

DISCUSSION

Individual defendants bring a motion to dismiss, arguing that (1) plaintiffs have failed to plead their claims under 215 ILCS 5/154 with particularity, as required under Federal Rule of Civil Procedure 9(b), (2) "best knowledge" and "severability" contract provisions foreclose plaintiffs' claims for rescission, and/or (3) Counts III through VI as against defendant Aronoff are unripe. Individual defendants also join in Bally's motion to dismiss or stay pending resolution of the Bally Matters. Bally's motion argues that because the issues in plaintiffs' case are inseparable from the issues in the underlying Bally matters, plaintiffs' complaints must be dismissed without prejudice, or stayed pending resolution of the underlying suits.

Rule 9(b)

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. McDonald v. Household Intern., 425 F.3d 424, 425 (7th Cir.2005); Gibson v. City of Chicago, 910 F.2d 1510, 1520-21 (7th Cir.1990). Generally,

complaints in federal court are successful if they contain a "short and plain statement of the claim showing that the pleader is entitled to relief" (FED.R.CIV.P. 8(a)(2)), and will be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted." Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir.1995). *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 9(b), however, implements a heightened pleading requirement for "all averments of fraud or mistake," wherein "the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV.P. 9(b). Under Rule 9(b), plaintiffs must plead fraud with particularity, meaning they must allege the "who, what, when, where, and how" of the circumstances constituting fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990).

Defendants contend that 215 ILCS 5/154, for rescission of the insurance contracts, is a claim of fraud that falls under Rule 9(b)'s heightened pleading requirements. The statute reads:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

215 ILCS 5/154. Thus, the insurance policy is voidable if either (1) the insured made a material misrepresentation or (2) the insured made a misrepresentation with the intent to deceive. Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co., 821 N.E.2d 706, 715 (Ill.App.Ct.2004) (finding that Section 154 makes a contract voidable).

Because the rescission statute applies to actions made with "actual intent to deceive,"

defendants argue that plaintiffs must meet 9(b)'s pleading requirements. Plaintiffs disagree, arguing that Rule 9(b) does not cover Counts IV through VI, which are based entirely in contract law; that 215 ILCS 5/154 does not fall under the ambit of Rule 9(b); and that even if Rule 9(b) was applicable, plaintiffs have met its burden.

First, we agree with plaintiffs that Rule 9(b) does not cover Counts IV through VI. Second, we note that the statute allows for rescission in one of two situations: where a misrepresentation was made with an intent to deceive, or a misrepresentation was made that materially affected the risk accepted or hazard assumed. 215 ILCS 5/154; New England Mut. Life Ins. Co. v. Bank of Illinois in DuPage, 994 F.Supp. 970, 976 (N.D.Ill.1998). Because we strictly construe Rule 9(b), applying it only in cases of "fraud and mistake and nothing else" (Kennedy v. Venrock Assoc., 348 F.3d 584, 593 (7th Cir.2003)), a statute under which either fraudulent conduct (intent to deceive) or non-fraudulent conduct (material misrepresentation) is prohibited, only allegations under the first theory can be dismissed under Rule 9(b). Id.; Adamczyk v. Lever Bros. Co., Div. of Conopco, 991 F.Supp. 931, 939 (N.D.Ill.1997). Thus, even if we determined that Rule 9(b) applied to the intent-to-deceive prong of the rescission statute, and that plaintiffs did not satisfy its heightened pleading requirement, we still would not dismiss the entire action, just that particular piece of the action. Regardless of any pleading requirement, plaintiffs can proceed on their rescission claims under a theory of material misrepresentation.[5]

We will not foreclose plaintiffs' option of also pursuing the rescission statute's intent-to-deceive theory if the Illinois courts would not consider such a claim to be analogous to a

---

[5]Thus, individual defendants' arguments that the materiality of the misstatements must meet Rule 9(b)'s requirements must fail. Materiality is only necessary for a theory of material misrepresentations, which does not require fraudulent intent.

fraud claim, or if plaintiffs sufficiently pled such a claim with particularity. As we find no case in which Rule 9(b) applied to 215 ILCS 5/154 in a federal court, it is unclear whether the intent-to-deceive prong of the rescission statutes requires heightened pleading.[6] We need not resolve the issue, however, as we find that plaintiffs have satisfied the heightened pleading standard under Rule 9(b). Plaintiffs allege that the Proposal Forms, in which material financial misstatements were incorporated via the attachment of specific SEC forms and filings, included misrepresentations; that defendant Dwyer signed the Proposal Forms, averring their truthfulness; that Bally publicly acknowledged that defendant Dwyer participated in improper accounting practices and made at least one misrepresentation to the SEC; that the Proposal Forms were dated April 12, 2002 and June 23, 2003; that the misrepresentations were made to Gulf, ACE and FFIC, in an effort to secure insurance underwriting; the dates and content of Bally's public announcements regarding the financial misstatements and improper accounting practices; and the dates (fiscal years 2000 through 2003 and the first quarter of 2004), and amounts of financial restatements.[7] Such allegations satisfy the requirements of Rule 9(b). *See, e.g.*, Event News Network, Inc. v. Thill, 2005 WL 2978711, *3 (N.D.Ill.2005). *See also* In re SmarTalk Teleservices, Inc. Sec. Litig., 124 F.Supp.2d 527, 543, n5 (S.D.Ohio 2000) ("Although the Defendants are correct when they argue that a restatement alone is not sufficient to establish securities fraud, they cannot legitimately

---

[6]A Fifth District Illinois court indicates that it might. *See* Alperin v. Nat'l Home Life Assurance Co., 336 N.E.2d 365, 367 (Ill.App.Ct.1975) (distinguishing the two paths to avoiding insurance coverage, noting, "A *fraudulent* intent to deceive is not required when the misrepresentation is shown to materially affect either the acceptance of the risk or the hazard assumed by the company") (emphasis added). But a court in this district may disagree. *See* Tessendorf v. First Colony Life Ins. Co., 1993 WL 57485, *5, n2 (N.D.Ill.1993) ("Defenses based on section 154 and common law fraud are distinct from each other, and Tessendorf cites no Illinois authority that requires proof of actual fraud under section 154").

[7]Additionally, FFIC gave several examples of financial misstatements on which it relied (*id.*, at ¶¶44, 45).

contend at this stage of the pleading that a restatement is not sufficient to establish that the original statements were not false when made"); Katz v. Household Int'l, Inc., 91 F.3d 1036, 1040 (7ᵗʰ Cir.1996) (Rule 9(b) "does not require plaintiffs to plead facts to which they lack access prior to discovery"). Thus, plaintiffs may continue to pursue their rescission action against defendants under either prong of 215 ILCS 5/154.

## "Best Knowledge" and "Severability" Clauses

Individual defendants next argue that because the complaints do not allege misstatement, omissions or knowledge that can be imputed to the individual defendants, such allegations must be dismissed. Specifically, defendants argue that the "severability" clause and/or "best knowledge" clause, "working independently, each precludes rescission unless Plaintiffs can prove that the person who signed the Proposal Form – Dwyer – knew at the time that it contained material misstatements" (ind. defs' motion at 9). The "severability" clause reads:

> It is agreed by the Company and the Insured Persons that the particulars and statements contained in the Proposal Forms and any information provided therewith (which shall be on file with the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the Company and the Directors and Officers that the statements in the Proposal Forms or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, however, that *except for material facts or circumstances known to the person(s) who subscribed the Proposal Forms*, any misstatement or omission in such Proposal Forms or information provided therewith in respect of a specific Wrongful Act by a particular Director or Officer or his cognizance of any matter which he has reason to suppose might afford grounds for a future Claim against him shall not be imputed to any other Director or Officer for purposes of determining the validity of this Policy as to such other Director or Officer.

(cplt., ex. A, at 8) (emphasis added). The "best knowledge" clause reads:

> The undersigned Officer of the Company declares that to *the best of his or her knowledge* the statements set forth herein are true and correct and that reasonable efforts have been made to obtain sufficient information from each and every Director and Officer proposed for this insurance to facilitate the proper and accurate completion of this Proposal Form.

(cplt., ex. A; ex. E, at 3) (emphasis added).

The individual defendants expend significant energy arguing that the "severability" clause and/or "best knowledge" clause forecloses rescission of the policies, taking for granted that plaintiffs did not sufficiently allege that Mr. Dwyer knew at the time of the falsity of the misstatements made in the Proposal Form. Before we consider such arguments, we must determine whether plaintiffs did in fact sufficiently plead Mr. Dwyer's knowledge of misstatements. In their response, in a footnote, plaintiffs allege that "such knowledge can nevertheless be inferred from the Complaint's existing allegations." We agree. Plaintiffs allege that Dwyer was the Executive Vice President and Chief Financial Officer and served as a director of Bally (cplt., ¶ 10); that he signed the 2002 Proposal Form (*id.*, ¶ 26); that such a signature declared that "to the best of his...knowledge the statements set forth herein are true and correct" (*id.*, ex. A; ex. E, at 3); that Bally publicly recognized Dwyer's culpability in the events leading to Bally's restatements, including making "'a false and misleading statement to the SEC,'" (*id.*, ¶ 48); that such impropriety resulted in Bally's determination to cease payments under Dwyer's severance package (*id.*); and that the misstatements were made with an intent to deceive (*id.*, ¶¶ 54, 58, 62). Logically, we can assume that if Mr. Dwyer was responsible for making false statements in forms and filings to the SEC, he then used those same SEC forms and filings as support for the insurance applications, and he did so with an intent to deceive, then he must have known about the misstatements at the date of the filing of the Proposal Form. Therefore, we find that at this stage defendants cannot rely on the

"severability" or "best knowledge"clauses to dismiss plaintiffs' claims.[8]

**Defendant Aronoff**

Finally, individual defendants argue that Counts III through VI must be dismissed as to defendant Aronoff. Because Mr. Aronoff resigned as a director of Bally on March 19, 2003, individual defendants argue that plaintiffs cannot and do not allege either that any claim has been made against Mr. Aronoff under the 03/04 Renewal Policies or that Mr. Aronoff has made any demand as against Gulf or FFIC under those policies. Therefore, individual defendants assert that there is no "actual controversy" necessary to maintain jurisdiction over Mr. Aronoff under the Declaratory Judgment Act, 28 U.S.C. § 2201, and move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1).

The Act provides a remedy "only in cases of 'actual controversy.'" Solo Cup Co. v. Federal Ins. Co., 619 F.2d 1178, 1189 (7th Cir.1980). In the insurance context, courts in this circuit have repeatedly held that the case or controversy requirement is not satisfied until a suit has been brought against the insured that might lead to a claim against the insurer. *See id.* ("The mere possibility that proceedings might be commenced against an insured regarding an act of the insured's as to which the insurer might contest coverage, is not sufficient to create a controversy within the meaning of either the Declaratory Judgment Act or Article III of the Constitution"); General Ins. Co. of America v. Lawrence Walner & Assoc., Ltd., 1999 WL 412645, *1 (N.D.Ill.1999); Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Cont'l Illinois Corp., 110 F.R.D. 615, 617 (N.D.Ill.1986). In fact, at least one court has noted that the

---

[8]If plaintiffs choose to proceed on the theory of material misstatements, rather than intent to deceive, or if evidence shows that Mr. Dwyer did not in fact have knowledge of the misstatements when he made them either to the SEC or to plaintiffs, we may have to address the merits of defendants' remaining arguments at a later date.

focus of the inquiry should be on the defendant's statements and conduct, "since an 'apprehension alone, if not inspired by the defendant's actions, does not give rise to an actual controversy.'" Commercial Underwriters Ins. Co. v. Aires Environmental Serv., Ltd., 2002 WL 31017617, *2 (N.D.Ill.2002) (citing Trippe Mfg. Co. v. Am. Power Conversion Corp., 46 F.3d 624, 627 (7th Cir.1995)).

In this case, the parties disagree as to whether any underlying suit has been brought against Mr. Aronoff that implicates the 03/04 Renewal Policies and whether Mr. Aronoff has made any demands under those policies. First, we note that it is plaintiffs' burden to set out the basis of federal jurisdiction and, therefore, their responsibility to "prove" any contested factual allegation. Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 540 (7th Cir.2006) ("What the proponent of jurisdiction must 'prove' is the contested factual assertions...). Because we can consider "'whatever evidence has been submitted'" in considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (Capital Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir.1993)), plaintiffs have had the opportunity to submit evidence supporting jurisdiction – evidence that claims implicating the 03/04 Renewal Policies have been brought against defendant Aronoff and he has in fact made a demand for coverage under such policies. Without such evidence we cannot find subject matter jurisdiction. Therefore, we dismiss Counts IV through VI of the complaint and Counts III through V of the complaint in intervention with respect to defendant Aronoff. Dismissal is granted without prejudice.

Individual defendants also suggest that defendant Aronoff must be dismissed from Count III in the complaint and Count II in the complaint in intervention for the same reasons. Such claims, however, address the validity of the insurance policy, and whether defendant Aronoff has made a demand under such a policy is irrelevant. If defendant Aronoff is covered

under the policy, then it may be rescinded as to him. *Cf.* General Ins. Co. of America, 1999 WL 412645, *1 (no federal subject matter jurisdiction over rescission claim because possible claims would not create an amount in controversy in excess of the jurisdictional amount required by 28 U.S.C. § 1332). *But see* Nat'l Union Fire Ins. Co. of Pittsburgh v. Wilkins-Lower & Co., Inc., 1993 WL 453438, *5 (N.D.Ill.1993) ("There is a recognized corollary to the jurisdictional amount requirement that if multiple defendants are jointly liable, then the claims against them may be aggregated to fulfill the jurisdictional requirement").

## Bally's Motion to Dismiss or Stay

We turn now to Bally's motion to dismiss or stay this action pending resolution of the underlying Bally matters, a motion in which individual defendants have joined. Bally argues that because the issues in the underlying suits are inseparable from the issues in this action, we should grant dismissal or issue a stay. Generally, Illinois courts have held that declarations regarding an insurer's duty to indemnify are premature before the resolution of the underlying cases. Maryland Cas. Co. v. Chicago and North Western Transp. Co., 466 N.E.2d 1091, 1095-1096 (Ill.App.Ct.1984) ("A declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not then ripe for adjudication"). *See also* Burnett v. Safeco Ins. Co. of Illinois, 590 N.E.2d 1032, 1038 (Ill.App.Ct.1992); Brotherhood Mut. Ins. Co. v. Roseth, 532 N.E.2d 354, 359 (Ill.App.Ct.1988). Such a rule exists to protect defendants from "an 'untimely determination in the declaratory judgment action [that] could subsequently prejudice a party in the underlying action through the application of collateral estoppel.'" Walgreen Co. v. Liberty Mut. Co., 1987 WL 18569, *1 (N.D.Ill.1987) (*citing* Maryland Cas. Co., 466 N.E.2d at 105-96). "Where the issues in an underlying suit and a

declaratory judgment action are separable, deciding the question of coverage in a collateral proceeding prejudices no party" (Murphy v. Urso, 430 N.E.2d 1079, 1084 (1981)), and thus can be adjudicated.

We are given discretion to dismiss or stay an action for declaratory judgment, depending on "considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). Following the direction of Illinois courts, we will dismiss this insurance action if we determine that the issues in the underlying actions are inseparable from the issues in the declaratory judgment action before us. Defendants argue that the issues are inseparable because both the securities fraud actions (the Bally matters) and this action attack the same financial statements and turn on the issue of defendants' intent to mislead or misrepresent. Specifically, defendants argue that "the Insurers and the underlying securities plaintiffs both allege misstatements in Bally's financial statements from 2002 through 2003," and "both this declaratory judgment action and the underlying securities claims put at issue the intent with which the relevant financial statements were prepared and submitted" (Bally's brief at 8-9). Plaintiffs' response makes three counter arguments. First, plaintiffs suggest that because this action is primarily a rescission action, as opposed to a declaratory judgment action seeking non-coverage, defendants' arguments must fail. Second, plaintiffs indicate that "while 'intent' may be required to establish Bally's liability in the pending securities cases," because the Illinois rescission statute can be based on a materially false statement in the application without any proof of intent, intent "is not an essential element of plaintiffs' claims for rescission" (plfs' resp. at 18). Finally, plaintiffs contend that "although the same financial statements may be the subject of both this action and the other cases, neither the falsity of those statements nor their materiality can be seriously contested

in either litigation at this point, given Bally's restatement of those financials" (*id.*).

First, although we have found no case explicitly dismissing a suit or granting a stay for rescission of a contract under Section 154, pending resolution of the underlying cases, the analysis of at least one Illinois court indicates to us that such an action would be acceptable. *See* Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Insurance Co., 821 N.E.2d at 718-19 (finding that defendant did not waive its right to rescind an insurance policy under Section 154 by failing to bring a declaratory judgment action earlier, stating that "even if Coregis had filed its declaratory judgment action earlier than it did, the circuit court was certainly under no obligation to (and possibly could not) rule until the underlying lawsuit involving the insured...was resolved."). Further, the concern that fact-finding in an action for non-coverage might prejudice a defendant in an underlying action is equally applicable where the declaratory judgment case is an action for rescission of an insurance contract under Section 154.

Second, plaintiffs argue that because the Illinois rescission statute allows plaintiffs to proceed if they show either false statement with actual intent to deceive, or false statement material to the acceptance of the risk or hazard assumed by the insurance company, the issue of intent is not an essential element of their rescission claim. Plaintiffs waver on whether they intend to pursue their rescission claim under an intent-to-deceive or material misrepresentation theory. In response to defendants' argument that the issues are not separable, plaintiffs' indicate that they will likely proceed under a material misrepresentation theory. The claims tell a different story, indicating that plaintiffs wish to keep both avenues open. Counts I, II and III of the complaint, and Counts I and II of the complaint in intervention, state that the application materials, including the Proposal Forms, "contained

material misrepresentations or false warranties either made with the actual intent to deceive

or that materially affected the acceptance of the risk or the hazed assumed by [insurer]" (cplt.,

¶¶54, 58, 62; cplt. in intervention, ¶¶51, 56). Additionally, plaintiffs relied on an intent-to-

deceive analysis in proving that they pled defendant Dwyer's knowledge of the misstatement

in their attempt to explain away the "best knowledge" and "severability" clauses. In fact, such

was the reasoning we adopted in determining that the clauses did not preclude plaintiffs from

bringing suit against the individual defendants. Plaintiffs cannot have it both ways. Unless

they amend their complaints to pursue only a material misrepresentation theory for rescission,

defendants' intent is squarely at issue in this case. And, because intent also lies at the heart

of the underlying actions, we cannot say that the issues are separable. (*See* plfs' response at

18, stating that "'intent' may be required to establish Bally's liability in the pending securities

cases"). *Cf.* <u>Allianz Ins. Co. v. Guidant Corp.</u>, 839 N.E.2d 113 (Ill.App.Ct.2005) (finding that

declaratory judgment insurance action was separable from an underlying action when it raised

an issue of whether insured knew about *potential claims* arising from the use of insured's

defective products, as compared to the underlying action, which raised an issue of whether

insured knew of its product's *defect*).

Plaintiffs' final argument also proceeds on a material misstatement theory. Again,

unless they amend their complaints, we will not prejudice defendants by making factual

findings that will influence the underlying actions.[9] Because we should not "determine

---

[9]Defendants also contend that prejudice would attach if we required "them to engage in litigation on multiple fronts." (Bally's motion at 9). Although several courts have been concerned about such prejudice (*see* <u>Wells Dairy, Inc. v. Travelers Indemnity Co. of Illinois</u>, 241 F.Supp.2d 945, 976-977 (N.D.Iowa 2003); <u>Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co.)</u>, 25 Cal.App.4th 902, 909-910 (Cal.App.Ct.1994)), at least one Illinois court has denied a request to stay where the underlying issues were separable, but defendants asserted that they would be prejudiced by fighting a "two-front war." <u>Allianz Ins. Co.</u>, 839 N.E.2d at 120.

disputed factual issues that are crucial to the insured's liability in the underlying lawsuit," (<u>Bituminous Cas. Corp. v. Fulkerson</u>, 571 N.E.2d 256, 261 (Ill.App.Ct.1991)), and we have wide discretion to hear a declaratory judgment action, we dismiss the action with leave to replead upon resolution of the underlying Bally matters.

<u>CONCLUSION</u>

For the reasons stated above, we grant Bally's and individual defendants' motion to dismiss pending resolution of the underlying Bally matters. Additionally, we grant individual defendants' motion to dismiss Counts IV-VI in the complaint and Counts II-IV in the complaint in intervention as to defendant Aronoff. Dismissal is made without prejudice.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

_____Sept. 11_____, 2006.